UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MMG FINANCIAL CORP.,

        Plaintiff,

v.                                                   Case No. 06-C-929

MIDWEST AMUSEMENT PARK, LLC,
d/b/a USA INTERNATIONAL RACEWAY, et al.

        Defendants.

## DECISION AND ORDER

Plaintiff alleges that Defendant Midwest Amusement Park, LLC, d/b/a USA International Raceway, has breached a contract to pay for $90,000 worth of go-karts that plaintiff financed. Defendant US Oil & Acquisitions has moved to dismiss the plaintiff's fraudulent transfer claim, and the plaintiff has moved to compel responses to certain of its interrogatories and requests for production of documents (RFPs). For the reasons given below, the motion to dismiss will be denied and the motion to compel will be granted in most, but not all, respects.[1]

Underlying most of plaintiff's requests for information is its belief that Midwest Amusement Park, LLC is an undercapitalized shell entity operated or controlled by the other defendants. In particular, all of the defendant entities are, in plaintiff's view, controlled by the Samanta Roy Institute of Science & Technology (SIST), a nonprofit corporation. Interrogatories No. 7 and 9, as

---

[1] I recognize that the motion to dismiss is not fully briefed, but the issues it raises are intertwined with the present discovery dispute. I therefore address both motions together.

well as several RFPs, seek information about the revenues and profits earned by the raceway. (Schmidt Decl., Ex. C.) Plaintiff's theory of the case is that payment for the go-karts was to come out of revenues earned by the raceway, and so it believes its profitability and revenues are fair game. Defendants believe such discovery is premature, as the plaintiff should be able to obtain such information only once it secures a judgment. Yet plaintiff's efforts are not directed at obtaining information necessary to collecting on a judgment (though that might be a collateral result); the dispute in this case directly involves the raceway's revenues. The document memorializing the agreement signed by Defendant Kal Gronvall states that the payments for the go-karts would be based on 50% of the revenues during the racetrack's active months, with payments suspended during the winter. (Schmidt Decl., Ex. B.) If the racetrack now says it cannot pay, the information about its finances is directly relevant to the merits of the case (i.e., the nature of its obligation to pay), not merely any judgment that might later be obtained.

Plaintiff also made discovery requests aimed at uncovering the relationships of the corporate defendants. RFPs No. 2 and 5 were directed towards Midwest Amusement's finances. Plaintiff asserts that Midwest has no corporate structure or assets of its own, but rather is an arm of SIST, whose board made and approved the go-kart deal in the first place. Request No. 2 seeks documentation underlying the answers provided in response to the interrogatories. Request No. 5 seeks the financial records of Midwest Amusements. As set forth above, these requests are relevant to the merits of the case as well as plaintiff's argument for piercing Midwest's corporate veil.

Defendants do not seem to protest the first two RFPs, but they object strenuously to RFP No. 6, which seeks financial information about SIST. They assert that if the allegation is that Midwest Amusement's corporate veil should be pierced, then it is only *Midwest's* finances that are truly at

2

issue. If SIST is the parent of a sham corporation, it might ultimately be on the hook for damages; but at this stage the only question is whether Midwest Amusement's corporate veil should be pierced, and that question does not require inquiry into the parent's finances. At this stage, I agree with SIST that the plaintiff has not demonstrated why SIST's finances should be disclosed. The second amended complaint merely alleges that Midwest Amusements is the alter ego of SIST, and it seems that assertion can be explored without reference to SIST's own finances. If plaintiff eventually can make a stronger case for the relevance of SIST's financial information, however, it may renew its discovery request. *See, e.g. ,Niver v. Travelers Indem. Co. of IL,* 430 F. Supp.2d 852, 870-71 (N.D. Iowa 2006) (allowing discovery of parent corporation's finances).

Finally, the plaintiff seeks information relevant to its fraudulent transfer claim. Plaintiff alleges that soon before this lawsuit was filed, Midwest Amusements transferred the property on which the racetrack operates to US Oil & Acquisitions as a means of reducing or eliminating its own assets and ability to repay plaintiff. In particular, it has requested any appraisals of the property on which the racetrack sits, as well as financial information about Midwest Amusements and US Oil & Acquisitions.

US Oil & Acquisitions protests, and the argument it raises in response to the discovery demands is the same one it makes in its motion to dismiss the fraudulent transfer claim. In essence, it posits that there can be no fraudulent transfer because there has been no judgment or lien against any of the defendants. In other words, the plaintiff cannot claim a fraudulent transfer until he has a judgment or lien against a defendant. US Oil & Acquisitions insistently clings to ancient Wisconsin caselaw for this principle, but Wisconsin, like many jurisdictions, has adopted the Uniform Fraudulent Transfers Act (UFTA). As other courts have recognized, "modern fraudulent

3

transfer law, like []UFTA, has dispensed with the lien requirement, focusing instead on the debtor's intent to frustrate the creditor once its claim is made known." *Double Oak Const., L.L.C. v. Cornerstone Development Intern., L.L.C.,* 97 P.3d 140, 146 (Colo. App. 2003). Indeed, the statute itself contains a broad definition of the sorts of claims that may give rise to fraudulent transfer liability: "'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Wis. Stat. § 242.01(3). Not surprisingly, given that the UFTA is a uniform law, other jurisdictions echo Wisconsin's definition of a claim and apply it broadly. *See Tolle v. Fenley,* 132 P.3d 63, 66 (Utah Ct. App. 2006) (threat of lawsuit is itself a "claim" under UFTA); *Hullett v. Cousin,* 63 P.3d 1029, 1034 (Ariz. 2003) ("The UFTA's definition of claim is unquestionably broadly worded.")

The point is that a plaintiff alleging fraudulent transfer need not have a perfected right to payment but merely a claim to funds or property, regardless of whether that claim is disputed.[2] Here, plaintiff asserts that Defendant Midwest Amusements transferred valuable property to US Acquisitions & Oil while plaintiff and Midwest were in negotiations for payment for the go-karts. It further asserts that Midwest Amusements did not receive a fair price for the property. This at least states a claim for fraudulent transfer, and the fact that there is as yet no judgment or lien does not foreclose the plaintiff's fraudulent transfer claim against US Acquisitions & Oil. For this reason, the motion to dismiss will be denied and the motion to compel will be granted.

---

[2]Though the definition of "claim" is certainly broad, the plaintiff must still satisfy UFTA's other requirements to show that the transfer was fraudulent, e.g., that the debtor did not receive fair value for the transfer, Wis. Stat. § 242.05(1), or that the debtor intended to hinder or defraud the creditor, Wis. Stat. § 242.04.

4

Accordingly, the motion to dismiss is **DENIED**; the plaintiff's motion to compel is **GRANTED** in all respects except as to questions pertaining to the finances of Defendant SIST; plaintiff may take follow-up depositions through September 24, 2007. No attorney's fees are awarded.

**SO ORDERED** this ___30th___ day of August, 2007.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge