UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MMG FINANCIAL CORP.,

    Plaintiff,

v.                                                          Case No. 06-C-929

MIDWEST AMUSEMENT PARK, LLC, et al.,

    Defendant.

**ORDER**

In February 2009, Plaintiff MMG Financial Corp. filed a motion for sanctions and a motion for default judgment against the Defendants. The next month, Defendants filed for bankruptcy and the case was stayed. Following dismissal of the bankruptcy action, Plaintiff filed a supplemental motion for sanctions in September 2009. A hearing was scheduled on the motions, but due to uncertainty about stays imposed by the courts hearing the bankruptcy action, the hearing was removed from the calendar. In May 2010, counsel for Plaintiff informed the Court that the bankruptcy appeal had been dismissed and that its pending motions were now ready for adjudication. A hearing was held on July 12.

Plaintiff seeks legal expenses and costs incurred in its fruitless attempts to obtain financial information from Midwest Amusement Park, LLC. One of its interrogatories had sought "All financial records of Midwest Amusement Park LLC, including, but not limited to, annual financial reports, income statements, account books, bank statements, credit card statements, and balance sheets." This and similar requests were the basis of previous motions to compel and for sanctions,

which this Court granted, but even so the Defendants did not provide any bank statements. In fact, during her February 2009 Rule 30(b)(6) deposition, the Defendants' designee (who happens to be an attorney) expressed surprise at counsel's question:

> Q: Why haven't you looked for [the bank statements]?
>
> A: I haven't had any reason to look for them.

Plaintiff views this as an outrageous and insouciant response to legitimate discovery requests and argues it is unconscionable that it has taken years to get something so basic as the company's bank statements. The statements were not provided, in fact, until half-way through the July 12 hearing, and even now it is unclear whether the materials provided in open court constitute complete records. Plaintiff suggests that the delay is part of a deliberate strategy to wear it down and notes that Alan Eisenberg, one of Defendants' previous attorneys, essentially admitted as much in a veiled comment to Plaintiff's counsel.

In their defense, Defendants assert that the motion for sanctions was precipitous because it was filed a week before March 5, 2009, which is when the Defendants had informally promised to produce the materials. Even if true, however, that ignores the fact that Defendants did *not* turn over the information by March 5, 2009. In fact, there has been no explanation for why it took an additional sixteen months to produce the bank statements. Although the case was stayed during the bankruptcy proceedings, and partly stayed during the pendency of a motion for recusal, there is no explanation for why the records were produced only on the date of the hearing, a hearing that was scheduled three weeks earlier. The September 29, 2009 response to the motion merely states that the Defendants "have complied and are complying with Plaintiff's requests," a fact belied by the disclosure of the relevant documents only in open court during a hearing nearly a year later.

Accordingly, given the extreme nature of the delay and the utter lack of explanation from the Defendants, I conclude that a monetary sanction is appropriate.

The question is which fees and costs are reasonably shifted to the Defendants. In addition to the fees sought for filing its motions to compel and for sanctions, Plaintiff seeks fees it incurred in monitoring Defendants' bankruptcy and in opposing their motion for recusal. First, I agree with Defendants that fees incurred in opposing the motion for recusal are not appropriately awarded. Although I found the arguments for recusal unpersuasive, the motion was not a baseless one, and certainly the purported "hit list" provided at least a reasonable, non-frivolous basis for the motion. Second, I agree with Defendants that Plaintiff's expenses in monitoring their bankruptcy proceedings are not appropriately shifted. Plaintiff states that monitoring was the only reasonable means of obtaining some of the financial information it has sought in this lawsuit, but even if that is true it is a parallel or redundant means of obtaining what it is seeking (and presumably now receiving) through its motions for sanctions and motions to compel in this action, for which I will award fees. Plaintiff's counsel reasonably proposes that he receive 91% of his fees incurred in filing his original motion to compel given that I granted the motion with respect to ten of the eleven (91%) discovery requests at issue. That amounts to $1919.19. He further requests 50% of the fees and costs incurred for the deposition of Defendants' corporate designee (that is, the deposition in which she wondered why she would have had occasion to look for the company's bank records.) That amounts to $835.75. Finally, he seeks fees incurred in filing his motion for sanctions, which are $1168.50. These fees, totaling $3923.44, are reasonably shifted to the Defendants.

Plaintiff has also filed a motion for a default judgment. It seeks entry of judgment for the discovery abuses and delay set forth above and in other motions. It further notes that the bankruptcy

3

court found gross mismanagement and abuse on the part of the Defendants and it asserts that numerous other creditors have expressed their exasperation at Defendants' conduct. I am satisfied, however, that entry of judgment as a sanction would be too harsh a penalty at this point in the proceedings. That said, Plaintiff's frustration is both palpable and understandable, and in fact the Defendants' conduct is consistent with a deliberate effort to do nothing other than make it too expensive and time-consuming for Plaintiff to ever recover its judgment. The fact that we are dealing with something so mundane and basic as bank statements – which the company either possesses or can obtain from its bank for a nominal fee – is troubling. Added to this are such things as Defendants' earlier (now disbarred) attorney's dark suggestion that Plaintiff's attorney would never live long enough to see the end of the case, the bankruptcy court's comments (*see* Dkt. # 147, Ex. 1 (finding that the debtors had "beyond cavil, abused the bankruptcy process"), the Defendants' failure to file tax returns, and what appears to be a complete lack of interest in satisfying any of its debts. Yet, though its conduct is consistent with an improper and, frankly, unethical approach to litigation, I am not yet satisfied that the line justifying so drastic a sanction as a default judgment has been crossed. But because this case has all the earmarks of abuse, Defendants and their counsel are hereby warned that one more instance of misconduct will justify entry of judgment as a sanction. This is a case about two dozen go-karts, and the amount of money at issue was treacherously close to the jurisdictional minimum. Yet we are still here, four years later, after a jury trial and countless discovery motions. It is not only the Plaintiff who has to bear the expense and uncertainty of collecting the judgment it won; the Court itself, and the other litigants whose cases are put on hold while it devotes time to this case, are also inconvenienced. Litigation is not trench warfare, and neither is it a sport. There are limits, and we are at them.

4

The motion for sanctions is **GRANTED** in part: Defendants are to pay $3923.44 to Plaintiff for its attorney's fees. The supplemental motion for sanctions is **DENIED**. The motion for default judgment is **DENIED**.

**SO ORDERED** this   16th   day of July, 2010.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge